

155 2nd STREET, SUITE 4 • JERSEY CITY, NEW JERSEY 07302 • TEL (877) 561-0000 • FAX (855) JTB-LAWS
WWW.IFIGHTFORYOURRIGHTS.COM

Hon. William H. Pauley, III
United States District Court
    for the Southern District of New York
Daniel Patrick Moynihan
    United States Courthouse
500 Pearl Street
New York, NY 10007-1312

August 6, 2015

**Re:** *Velasquez et al. v. Safi-G et al*., **1:15-cv-03068-WHP**

Your Honor,

    We represent the Plaintiff in the above-referenced action and submit this letter jointly with Defendants (together, the "Parties") to respond to the Court's order of July 21, 2015 (Dkt. # 8), and to respectfully request that the Court (1) approve the Parties' settlement agreement, and (2) "So Order" the Notice of Voluntary Dismissal Pursuant to FRCP 41 filed by Plaintiff on July 2, 2015.

    Plaintiff worked as a server in one of Defendants' two restaurants. Plaintiff filed her complaint on April 21, 2015, alleging, on her own behalf and collectively, that Defendants failed to pay overtime and "spread of hours" wages in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law. Together with her counsel, Plaintiff estimated her actual damages at approximately $9,765 which, when combined with an equal amount in liquidated damages (under both the FLSA and the NY Labor Law) plus pre-judgment interest, resulted in a total of $20,870.

    Defendants have denied and continue to deny all of the allegations made against them. However, in order to avoid the burden, expense, uncertainty, and delay of discovery and litigation, counsel for the Parties entered into negotiations and ultimately arrived at an agreement to settle Plaintiff's individual claims. Counsel for the Parties agreed that Defendants would pay a total of $23,000 to settle Plaintiff's individual claims and compensate Plaintiff's counsel. Plaintiff consented to that amount, and to the allocation of one-third of the settlement amount to her counsel, in a writing signed on June 15, 2015, attached hereto as **Exhibit A**.

    The terms of the settlement were performed to the satisfaction of all Parties on July 2, 2015. The agreement was later memorialized in the Settlement Agreement and Mutual Release (the "Agreement"), signed by all Parties and attached hereto as **Exhibit B**.

As memorialized in the Agreement, Defendants paid a total of $23,000 to settle Plaintiff's individual claims and compensate Plaintiff's counsel. Two-thirds of that amount ($15,333.34) was paid to Plaintiff, and one-third ($7,666.66) was paid to Plaintiff's counsel. *See* Exhibit B. Plaintiff's net recovery is thus 73.5% of the original estimated value of her claim and more than one and one-half times (157%) her actual damages of $9,765.

Defendants made those payments on or about July 1, 2015. Plaintiff's counsel then filed a Notice of Voluntary Dismissal Pursuant to FRCP 41, Dkt. # 7, attached hereto as **Exhibit C**, on July 2, ahead of Defendants' deadline to answer or otherwise respond to the complaint.

The Parties now represent to the Court that the settlement memorialized in the Agreement: (1) is fair and equitable to all Parties; (2) reasonably resolves a bona fide dispute between the Parties with regard to Plaintiff's claims; (3) is the result of arms-length bargaining between counsel for the Parties; (4) contains monetary consideration for the Plaintiff that is both substantively fair and acceptable to the Plaintiff; and (5), together with Plaintiff's Notice of Voluntary Dismissal, discontinues the action. The Parties and their counsel have considered that the interests of all concerned are best served by compromise, settlement and dismissal of these claims, in exchange for the consideration already exchanged by the Parties as set forth in the Agreement.

**The Standard**

"A district court may approve a FLSA settlement between private litigants when the settlement is reached as a result of contested litigation to resolve bona fide disputes. In deciding whether to approve the settlement the court must scrutinize the agreement for fairness. If the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Kopera v. Home Depot U.S.A., Inc.*, 09 Civ. 8337 (WHP), 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011) (approving individual FLSA settlement) (internal citations and quotation marks omitted; citing and quoting *McMahon v. Olivier Cheng Catering and Events, LLC*. No. 08 Civ. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913, at *15-16 (S.D.N.Y. Mar. 3, 2010)).

> When reviewing an FLSA settlement that does not involve a certified class, the court typically examines the following factors: (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and the amount of discovery completed; (3) the risks of establishing liability; (4) the risks of establishing damages; (5) the ability of the defendants to withstand a larger judgment; and (6) the range of reasonableness of the settlement amount in light of the best possible recovery and all the risks of litigation. The court should also consider whether the settlement is the result of an arm's length negotiation conducted in good faith by counsel with significant experience litigating wage and hour suits.

*Calle v. Elite Specialty Coatings Plus, Inc.*, 13-CV-6126 (NGG) (VMS), 2014 U.S. Dist. LEXIS 164069, at *3-4 (E.D.N.Y. Nov. 21, 2014) (approving individual FLSA settlement) (citations omitted; citing *Peralta v. Allied Contracting II Corp.*, No. 09-CV-953 (NGO) (RER), 2011 U.S. Dist. LEXIS 91965, at *3 (E.D.N.Y. Aug. 1, 2011); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85

(2d Cir. 2001); *see also Misiewicz v. D'Onofrio Gen. Contractors Corp.*, No. 08-CV-4377 (KAM), 2010 U.S. Dist. LEXIS 60985, at *10 (E.D.N.Y. May 17, 2010)). In undertaking this scrutiny, a court should keep in mind the "strong presumption" in favor of finding a negotiated settlement to be fair, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Both courts and parties also do well to remember that a "settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995). We also note that, while the FLSA "places 'strict limits on an employee's ability to waive claims … for fear that employers would [otherwise] coerce employees into settlement and waiver,' these concerns are not as relevant when the plaintiffs no longer work for the defendant," as is the case here. *Cisneros v. Schnipper Rest. LLC*, 13 Civ. 6266 (JMF), 2014 U.S. Dist. LEXIS 2111 (S.D.N.Y. Jan. 8, 2014) (citation and parenthetical omitted, quoting *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)).

In addition, "[w]hen an FLSA settlement includes an allotment of attorney's fees, the court must also evaluate the reasonableness of the fees. This ensures that the agreement is not influenced by conflicts between the interests of counsel and the plaintiff's interest in obtaining the best possible recovery." *Calle,* 2014 U.S. Dist. LEXIS 164069, at *4 (approving as reasonable negotiated fee of one-third of individual settlement amount, plus costs, in accordance with retainer agreement) (citations omitted; citing *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13-CV-3234 (LB), 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) (same)). "[T]here is a greater range of reasonableness for approving attorney's fees in an individual action where the parties settled on the fee through negotiation." *Misiewicz*, 2010 U.S. Dist. LEXIS 60985, at *15.[1]

**The Settlement is Fair and Reasonable, and Should be Approved**

Counsel for the Parties anticipated disputes over at least the following issues: the exact hours that Plaintiff worked; whether Defendants would be entitled to claim a tip credit; and whether the individual Defendant, Mr. Ghorchian, qualified as Plaintiff's "employer" such as to even be liable under the FLSA and NYLL. The complexity and the time and expense to litigate these issues would have depended on the defenses raised and thus are not foreseeable at this juncture.

In any event, although it was reached at an early stage of the proceedings, the settlement in the instant matter "resolve[s] bona fide disputes." *Kopera*, 2011 U.S. Dist. LEXIS 71816, at *2. Because of the relatively small size of Plaintiff's demand and in order that Plaintiff might receive her recovery promptly, counsel agreed to forgo the expense and delay of discovery. *See Reyes v. Buddha-Bar NYC,* No. 08 Civ. 2494, 2009 U.S. Dist. LEXIS 45277, at *8 (S.D.N.Y. May 28, 2009) (approving settlement and noting that "the value of an immediate recovery" can outweigh "the mere possibility of further relief" after litigation) (class settlement); *see also Goett v. Vi Jets Int'l, Inc.,* 14cv8256 (MHD), 2015 U.S. Dist. LEXIS 77263 (S.D.N.Y. Apr. 22, 2015) (approving individual settlement "reached early in the proceedings, reflecting the legitimate concerns of both sides to avoid time-consuming and potentially expensive litigation burdens, as well as plaintiff's desire to put this matter behind him"); *Dail v. George A. Arab Inc.,* 391 F.

---

[1] Indeed, at least one court has held that "[t]he FLSA does not require the court to assess the fairness of an agreed payment of attorneys' fees in settling an individual action." *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005).

3

Supp. 2d 1142, 1147 (M.D. Fla. 2005) ("Given the mandatory award of reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b), early resolution of FLSA claims are [sic] encouraged and extensive discovery typically is unnecessary.") (individual settlement).

No other plaintiffs came forward during the admittedly brief pendency of this matter; thus the settlement resolves only Plaintiff's individual claims,[2] lessening somewhat the burden on the Court to closely examine the settlement. *See Kopera*, 2011 U.S. Dist. LEXIS 71816, at *3 ("[B]ecause the settlement agreement impacts [the individual plaintiff] only, a class was never certified or noticed, and this action was not widely publicized, there is not the same level of concern over the procedural and substantive fairness of the agreement as with the settlement of class litigation.").

Given the facts recited above, counsel believe that Plaintiff's recovery of 73.5% of the original estimated value of her claim (and 157% of her actual damages) is within "the range of reasonableness … in light of the best possible recovery and all the risks of litigation." *Calle,* 2014 U.S. Dist. LEXIS 164069, at *4; *compare Goett*, 2015 U.S. Dist. LEXIS 77263 (approving individual settlement for 48% of "maximum recovery"); *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 57-58 (E.D.N.Y. 2010) (finding 17% recovery in class settlement to be reasonable). Plaintiff approved the settlement, *see* Exhibits A and B, in acknowledgment that it was "a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In re Gen. Motors*, 55 F.3d at 806.

**The Award to Plaintiff's Counsel Should be Approved**

As is typical in these cases, the attorneys' fees requested here "were entirely contingent upon success." *See Damassia v. Duane Reade, Inc.*, 04 Civ. 08819 (GEL); 04 Civ. 02295 (GEL), 2009 U.S. Dist. LEXIS 77489, at *9 (S.D.N.Y. July 27, 2009) (class settlement). Counsel "risked time and effort and advanced costs and expenses, with no ultimate guarantee of [any] compensation" whatsoever. *Id.*

Under the Agreement, Plaintiff's counsel were awarded one-third of the total recovery. *See* Exhibits A, B. Such a fee arrangement "is routinely approved by courts in this Circuit." *Rangel*, 2013 U.S. Dist. LEXIS 134207, at *4 (approving one-third fee arrangement in an individual settlement (but citing to class-settlement cases)); *see also Calle,* 2014 U.S. Dist. LEXIS 164069, at *4 (same); *Meigel v. Flowers of the World, NYC, Inc.*, 11 Civ. 465 (KBF), 2012 U.S. Dist. LEXIS 2359 (S.D.N.Y. Jan. 9, 2012) (approving one-third fee arrangement where individual plaintiff received 81% of original estimated value of her claim).

As has been noted by numerous courts, the percentage method "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.,* 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) (class settlement); *see also Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,* 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (the percentage method "is intended to mirror[] practice in the private marketplace where contingent

---

[2] This is the fourth FLSA/NYLL suit brought by individual employees of the subject restaurants, indicating that potential plaintiffs are well aware of opportunities to recover from these Defendants (the other suits were also settled). The Plaintiff in this case spoke with at least one of her former co-workers about her suit, but he declined to join. It appears that the pool of those willing to bring litigation over these issues may have been exhausted.

fee attorneys typically negotiate percentage fee arrangements with their clients") (class settlement). This rationale is consistent with the Second Circuit's decision in *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany,* 522 F.3d 182, 191 (2d Cir. 2008), where the Court held that a "presumptively reasonable fee" is one that takes into account what a "reasonable, paying client" would pay.

The percentage method promotes early resolution, by giving a plaintiff's lawyer confidence that he will be compensated for his work – and thereby removing an incentive plaintiffs' lawyers might otherwise have to run up their billable hours, "one of the most significant downsides of the lodestar method." *Johnson v. Brennan*, 10 Civ. 4712 (CM), 2011 U.S. Dist. LEXIS 105775, at *41-42 (S.D.N.Y. Sept. 16, 2011) (class settlement). The percentage method also preserves judicial resources, "because it relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions" and of having "to engage in a gimlet-eyed review of line-item fee audits." *Id.,* at *43 (citing *Goldberger v. Integrated Res. Inc.,* 209 F.3d 43, 48-49 (2d Cir. 2000) (class settlement)).

Courts typically compare a percentage award to counsel's lodestar as a "cross check." *Id.*, at *43-44 (noting that, in that situation, "courts are not required to scrutinize the fee records as rigorously" as when those records are the basis for a fee award). Here, the lodestar for Plaintiff's counsel is $6,777.00, comprised of:

- 15.4 hours of work[3] by Patrick S. Almonrode, an attorney with 11 years of litigation experience and the lead attorney on the case, billing at $350/hr.;
- 0.5 hours of work by Steve Overturf, an attorney with two years of litigation experience, also billing at $350/hr.;
- 1.6 hours of work[4] by Nicholas Conlon, an attorney with three years of litigation experience, billing at $345/hr.; and
- 1.1 hours of work[5] by Jason T. Brown, the head of the firm with 19 years of litigation experience, billing at $600/hr.

Detailed records are attached hereto as **Exhibit D.**

Counsel are also seeking reimbursement of $621.75 for their expenses, also detailed in **Exhibit D**. Those expenses – the cost of filing and serving the complaint, mailings, and some on-line research costs – were necessary and directly related to the representation and ultimate result. They are subsumed within, and not in addition to, the one-third award to counsel.

Thus, the fee portion (the total award of $7,666.66 minus expenses, or $7,044.91) represents a multiplier of only 1.04 over the lodestar. This multiplier is of course at the very low end of the range in this Circuit. *See In re Lloyd's Am. Trust Fund Litig.,* 2002 U.S. Dist. LEXIS 22663, at *81 (finding multiplier of *2.09* to be "at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *see also Goett*, 2015 U.S. Dist. LEXIS 77263, at

---

[3] Including a total of 6.3 hours billed for work in response to this Court's order of July 21, 2015 (Dkt. # 8).
[4] This work was entirely in response to the July 21 order.
[5] Including a total of 0.6 hours billed for work in response to the July 21 order.

*8-9 (approving multiplier of 1.06 for fee in individual settlement). We also note once again that Plaintiff approved this award to her counsel, a fact that certainly favors a finding of reasonableness. *See Mireku v. Red Visions Sys., Inc.*, 11 Civ. 9671 (RA) (JLC), 2013 U.S. Dist. LEXIS 172102, at *10 (S.D.N.Y. Dec. 6, 2013) (approving fee slightly larger than plaintiff's recovery, noting that "the fee award here is consensual").

Counsel obtained significant recovery for Plaintiff, in light of the risks and the potential for a smaller or even non-existent recovery, and Plaintiff agreed to the allocation of one-third of that recovery to her counsel. *See* Exhibits A, B. On that basis, and for all of the foregoing reasons, the Parties respectfully request that the Court approve the settlement in this matter, and that the Notice of Voluntary Dismissal Pursuant to FRCP 41 filed by Plaintiff on July 2, 2015 be "So Ordered."

Respectfully submitted,

By: _/s/ Patrick S. Almonrode_____  
Patrick S. Almonrode  
*patalmonrode@jtblawgroup.com*  
JTB Law Group LLC  

*Attorneys for Plaintiff*

By: _/s/ Michael A. King_____  
Michael A. King  
*romeo1860@aol.com*  
Law Offices of Michael A. King  

*Attorneys for Defendants*