```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10-7-15
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
                              :
KIMBERLY VELASQUEZ, *on behalf of*  :
*herself and others similarly situated*, :
                              :
                Plaintiff,    :
                              :    15cv3068
        -against-             :
                              :    MEMORANDUM & ORDER
SAFI–G, INC., *et ano.*,      :
                              :
                Defendants.   :
------------------------------X

WILLIAM H. PAULEY III, District Judge:

Plaintiff Kimberly Velasquez filed this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action against SAFI-G, Inc. (doing business as Caffe Buon Gusto) and its Chief Executive Officer, Nasser Ghorchian. The parties seek judicial approval of their proposed settlement agreement. (ECF No. 10-2 (hereinafter "Settlement Agreement").) For the following reasons, this Court will approve the Settlement Agreement only on the condition that Velasquez's counsel pay Velasquez an additional $2,883.63 from the contingency fee it received.

### BACKGROUND

Like a growing number of FLSA cases, this action settled shortly after it was filed. The Complaint was filed in April, 2015. Defendants never interposed an answer. In June, 2015, the parties requested an adjournment of the initial pretrial conference because they were negotiating a possible settlement. Then, on July 2, 2015, Plaintiff's counsel submitted a notice of voluntary dismissal. (ECF No. 7.) On July 21, 2015, this Court ordered the parties to submit their proposed settlement for approval. (ECF No. 8.)

Thereafter, Plaintiff's counsel submitted an agreement dated August 1, 2015, memorializing a Settlement Agreement between the parties purportedly reached on June 15, 2015. (ECF No. 10.) Specifically, the Settlement Agreement reported that Defendants had paid a total of

$23,000 in full settlement of Velasquez's FLSA and New York Labor Law claims. The payment was allocated in three separate checks: two payable to Velasquez each in the amount of $7,666.67, and one payable to JPT Law Group, LLC, in the amount of $7,666.67. The checks were sent to Plaintiff's counsel.

## DISCUSSION

I. Need for Judicial Approval of FLSA Settlements

Parties cannot privately settle FLSA claims without either the approval of the district court or the Department of Labor. See generally Cheeks v. Freeport Pancake House, Inc., --- F.3d ----, 2015 WL 4664283 (2d Cir. Aug. 7, 2015). To approve a settlement, this Court must be satisfied that the agreement is "fair and reasonable." See, e.g., Pena v. San Miguel Transp., Inc., No. 14-cv-1463 (WHP), 2015 WL 1938144, at *1 (S.D.N.Y. Apr. 7, 2015).

FLSA was designed "to correct and as rapidly as practicable to eliminate" the practice of employers failing to pay their employees proper wages. 29 U.S.C. § 202(b). "FLSA places 'strict limits on an employee's ability to waive claims . . . for fear that employers would coerce employees into settlement and waiver.'" Guareno v. Vincent Perito, Inc., No. 14cv1635, 2014 WL 4953746, at *1 (S.D.N.Y. Sept. 26, 2014) (quoting Armenta v. Dirty Bird Group, LLC, No. 13cv4603, 2014 WL 3344287, at *1 (S.D.N.Y. June 27, 2014)). This is also true when, as here, a settlement is reached among the parties prior to certification of a collective action or notice to potential class members. "Without judicial oversight . . . employers may be more inclined to offer, and employees, even when represented by counsel, may be more inclined to accept, private settlements that ultimately are cheaper to the employer than compliance with [FLSA]." Socias v. Vornado Realty L.P., 297 F.R.D. 38, 41 (E.D.N.Y. 2014).

II.     Settlement Agreement

Courts consider a number of factors when scrutinizing FLSA settlements. Pertinent here is the reasonableness of the settlement in light of the contested merits of the dispute, and the division of settlement funds between plaintiff and her counsel.

A. Bona Fides of the Dispute

"Before a court will find a settlement fair and reasonable, the parties must provide enough information for the court to examine the bona fides of the dispute." Guareno, 2014 WL 4953746, at *1 (quoting Mamani v. Licetti, 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014) (internal quotations omitted)). "The employer should articulate the reasons for disputing the employee's right to a minimum wage or overtime, and the employee must articulate the reasons justifying his entitlement to the disputed wages." Guareno, 2014 WL 4953746, at *1 (quoting Mamani, 2014 WL 2971050, at *1).

In the parties' joint submission, they explain that Velasquez's estimated damages plus pre-judgment interest total $20,870. Their "anticipated disputes" included: "the exact hours that Plaintiff worked; whether Defendants would be entitled to claim a tip credit; and whether the individual Defendant . . . qualified as Plaintiff's 'employer' such as to even be liable under the FLSA and NYLL." (ECF No. 10, at 3.) And, the parties explain that "[t]he complexity and the time and expense to litigate these issues would have depended on the defenses raised and thus are not foreseeable at this juncture." (ECF No. 10, at 3.) In light of the parties' representations, this Court finds that the Settlement Agreement "reflects a reasonable compromise over contested issues." Kopera v. Home Depot U.S.A., Inc., 09-cv-8337(WHP), 2011 U.S. Dist. LEXIS 71816, at *2 (S.D.N.Y. June 24, 2011). This Court nevertheless has an obligation to review the reasonableness of the attorney's fees.

B. <u>Attorney's Fees</u>

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." <u>Wolinsky v. Scholastic Inc.</u>, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012) (citation omitted). "In an individual FLSA action where the parties settled on the fee through negotiation, there is 'a greater range of reasonableness for approving attorney's fees.'" <u>Wolinsky</u>, 900 F. Supp. 2d at 336 (citations omitted). "Nevertheless, even in such cases, the Court must carefully scrutinize the settlement and the circumstances in which it was reached, if only to ensure that 'the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients.'" <u>Wolinsky</u>, 900 F. Supp. 2d at 336 (quoting <u>Cisek v. Nat'l Surface Cleaning, Inc.</u>, 954 F. Supp. 110, 110-11 (S.D.N.Y. 1997)); <u>see also</u> <u>Encalada v. Baybridge Enterprises Ltd.</u>, No. 14-cv-3113 BMC, 2014 WL 4374495, at *1 (E.D.N.Y. Sept. 2, 2014) (explaining when all parties are satisfied with the settlement, "the Court's primary function is to make sure that some of the plaintiff's recovery has not been unreasonably diverted to pay his attorney a greater fee than that to which he is entitled").

Under the Settlement Agreement, Velasquez's counsel received one-third of the settlement, in a contingency fee, totaling $7,666.67. Although awarding fees based on a percentage of the settlement is appropriate in some cases, this is not one of them. <u>See</u> <u>Skidmore v. John J. Casale, Inc.</u>, 160 F.2d 527, 531 (2d Cir. 1947) ("We have considerable doubt as to the validity of the contingent fee agreement; for it may well be that Congress intended that an employee's recovery should be net, and that therefore the lawyer's compensation should come solely from the employer."); <u>Silva v. Miller</u>, 307 F. App'x 349, 351-52 (11th Cir. 2009) ("To turn a blind eye to an agreed upon contingency fee in an amount greater than the amount determined to be reasonable after judicial scrutiny runs counter to FLSA's provisions for compensating the wronged employee.").

4

The parties' submission reveals the perverse incentive to settle that the promise of a contingency fee might create. Specifically, plaintiff's counsel's timesheets reveal that nearly half of the hours spent on this case (8.5 out of 18.6 hours) were spent on seeking this Court's approval of the settlement.[1] And that work was done only after Velasquez and her counsel had received Defendants' $23,000 payout. The majority of hours spent on the merits of the case itself (6.7 out of 10.1 hours) involved drafting or editing the Complaint. The remaining 3.4 hours included work on a damages model, speaking with Velasquez, and "checking" for other FLSA cases against the same Defendants. This work was performed by three experienced attorneys whose rates range from $350-$600 per hour. But it is unclear how counsel's experience advanced this litigation where the majority of time was spent drafting the Complaint, and any settlement negotiations were not even accounted for on counsel's timesheets.

Moreover, it appears that no written settlement agreement existed until after this Court ordered the parties to submit one. And this Court's order apparently triggered 2.7 hours of research regarding judicial approval of Rule 41 settlements, and 2 hours of research regarding contingency fees in FLSA cases. Indeed, the Settlement Agreement was not drafted until July 28, 2015, nearly a month after Defendants cut their checks to Velasquez and her counsel.

Counsel submits that the fee portion of their award (minus expenses) represents a multiplier of only 1.04 over the lodestar. But the lodestar is not a useful cross-check here because nearly half of the work was done after counsel had already been paid, and only in response to this Court's order requiring that any settlement agreement be submitted for approval. All of the professional time billed prior to the settlement totals $3,660. Adding $350 for drafting the Settlement Agreement and $210 for a letter concerning the settlement yields a lodestar of $4,220.

---

[1] Notably, the Settlement Agreement provides that "Plaintiff shall take all steps necessary to dismiss this Lawsuit, with prejudice, including any steps necessary to obtain Court approval of this Agreement." (ECF No. 10-2, at 3.)

Velasquez's counsel also incurred reasonable expenses prior to settlement, including $400 to file the case, $145.10 for service-related issues, and $17.94 in research. Accordingly, this Court will only approve this FLSA settlement if Velasquez receives a total of $18,216.96, and her counsel receives $4,783.04. Given the checks that have already been cashed, unless the parties wish to continue litigating this case, Velasquez's counsel shall pay Velasquez an additional $2,883.63.

## CONCLUSION

For the foregoing reasons, the parties' request for judicial approval of their Settlement Agreement is denied without prejudice. Plaintiff's counsel is directed to advise this Court by October 20, 2015 whether it has paid the additional sum of $2,883.63 to Velasquez, in which event this Court will close this case with prejudice.

Dated: October 7, 2015
       New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*All counsel of record.*